UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
CENTRAL DIVISION
AT LEXINGTON

CIVIL ACTION NO. 5:12-CV-333-KKC

NATURAL ALTERNATIVES, LLC ET AL.,                                    PLAINTIFFS

v.                             **OPINION AND ORDER**

JM FARMS, ET AL.,                                                    DEFENDANTS

\*\* \*\* \*\* \*\* \*\*

This matter is before the Court on the Plaintiffs' motion to dismiss (DE 22) the counterclaim filed against them by Defendants JM Farms and Max Smith (the "Defendants"). The Plaintiffs argue that this Court does not have subject matter jurisdiction over the counterclaim and that the counterclaim should be dismissed for failure to state a claim. For the following reasons, the motion will be denied.

**I.     Facts.**

This action began when the Plaintiffs, Natural Alternatives, LLC and Todd A. Bloomer, filed a complaint against the Defendants asserting that the Defendant JM Farms had breached a license agreement by which the Plaintiffs had granted JM Farms certain exclusive rights to certain United States and Canadian patents and trademarks.

According to the complaint, together, the Plaintiffs own five U.S. patents (the "330 patent," the "422 patent," the "753 patent," the "684 patent," and the "308 patent," ) and three U.S. trademarks (the Geomelt, Geosalt and Mountain Melt trademarks).  (DE 1, Complaint, ¶ 9.) The Plaintiff Bloomer also owns one Canadian patent (the "795 patent") and one Canadian trademark for the term "Geomelt." Bloomer has applied for four additional Canadian patents (the

"738 patent," the "532 patent," the "829 patent," and the "253 patent"). With the license agreement, the Plaintiff Natural Alternatives granted Defendant JM Farms exclusive rights to the patents and trademarks. In return, JM Farms agreed to pay Natural Alternatives a monthly royalty of $25,000. JM Farms has ceased paying this amount. The Plaintiffs assert a breach of contract claim against the Defendants.

The claim at issue in this motion is the Defendants' counterclaim. In their counterclaim, the Defendants assert that they have ceased paying the royalty payments because, in June 2012, the U.S. Patent and Trademark Office entered a final rejection of all the claims of one of the patents – the '330 patent. Thus, in July 2012, the Defendants provided the Plaintiffs with notice that they were immediately terminating the License Agreement. The Defendants assert that, later, the USPTO also rejected the claims of the '684 patent. The Plaintiffs assert that they have appealed or asked for reconsideration of the rejection of both of these patents and, thus, the status of both patents is still pending.

The Defendants assert that they are justified in ceasing to pay the royalty payment and terminating the license agreement because:

> 1) "[i]f the claims of a patent are rejected as unpatentable and, therefore, invalid . . . by reexamination at the United States Patent Office, then even before the reexamination is final, the enforceability of those claims becomes tenuous at best;" and
>
> 2) "if the claims receive a final rejection by the Patent Office during a reexamination, then the claims are unenforceable. . . [and] then there are no patent rights remaining in that patent and the exercise of those rights is prohibited.

(DE 9, Counterclaim ¶ 11.)

The Defendant JM Farms asserts a claim against the Plaintiffs under the Declaratory Judgment Act, 28 U.S.C. § 2201(a) asking the Court to declare that the '330 and '684 patents are

unenforceable and, thus, the license agreement is not enforceable and that JM Farms is not infringing the other patent rights that are the subject of the license agreement.

The Plaintiffs move to dismiss the counterclaim arguing that this Court lacks subject matter jurisdiction over it because there is no justiciable controversy. The Plaintiffs further assert that the Defendants' counterclaims should be dismissed for failure to state a claim.

**II. Analysis.**

**A Subject Matter Jurisdiction.**

The Declaratory Judgment Act provides that, "[i]n a case of actual controversy within its jurisdiction . . . any court of the United States. . . may declare the rights and other legal relations of any interested party seeking such declaration, whether or not further relief is or could be sought." 28 U.S.C. § 2201(a). "[T]he phrase 'case of actual controversy' in the Act refers to the type of 'Cases' and 'Controversies' that are justiciable under Article III." *MedImmune, Inc. v. Genentech, Inc.*, 549 U.S 118, 127 (2007).

This court has the jurisdiction to hear a declaratory judgment action when "the facts alleged, under all the circumstances, show that there is a substantial controversy, between parties having adverse legal interests, of sufficient immediacy and reality to warrant the issuance of a declaratory judgment." *Id.* (quoting *Maryland Casualty Co. v. Pacific Coal & Oil Co.*, 312 U.S. 270, 273 (1941)). The dispute must be "definite and concrete, touching the legal relations of parties having adverse legal interests" and be "real and substantial and admit of specific relief through a decree of a conclusive character, as distinguished from an opinion advising what the law would be upon a hypothetical state of facts." *Id.* at 126 (internal quotations omitted).

In *Medimmune*, a patent licensee believed that one of the patents it had rights to under the license agreement was not valid and that, even if it were valid, it did not cover one of the drugs

that the licensee was selling. Nevertheless, it continued making royalty payments and filed a declaratory-judgment action. The district court dismissed the action for lack of subject matter jurisdiction determining that the licensee could not have any "reasonable apprehension" of being sued for infringement since it continued paying the royalty payments. *Id*. at 122.

The Supreme Court reversed, finding that "the requirements of [a] case or controversy are met where payment of a claim is demanded as of right and where payment is made, but where the involuntary or coercive nature of the exaction preserves the right to recover the sums paid or to challenge the legality of the claim." *Id* at 131. Important for the case before this Court, however, the Supreme Court noted that there was no dispute that the "actual controversy" standards of the Declaratory Judgment Act would have been satisfied if the licensee had simply ceased making royalty payments as the Defendants have done in this case. *Id*. at 128.

Here, the Plaintiffs have sued the Defendants for breach of the license agreement because the Defendants have ceased paying royalty payments as required under the agreement. The Defendants argue that the patent rights they agreed to pay for are no longer valuable because of the reexamination proceedings and, thus, they need not continue paying the royalty payments. They ask for a declaration that the '330 and '684 patents are not enforceable. They also ask for a declaration that the license agreement is no longer enforceable because its purpose has been frustrated.

Thus, the enforceability of the patents and the license agreement is a definite and concrete dispute between the parties. In fact, it is the central dispute between the parties  In arguing that the Defendants' declaratory action does not present an actual case or controversy, the Plaintiffs recognize that "a patent validity challenge can be brought by the licensee if the validity of the patent is relevant to the issues to be resolved between the licensee and the patent

4

holder." (DE 22, Mem. at 14.) The Plaintiffs argue that here that is not the case because, even if the '330 and '684 patents are not enforceable, the Defendants would still owe royalties to the Plaintiffs under the terms of the license agreement at issue in this case.

This is an argument that goes to the merits of the Defendants' counterclaim. It is not an argument against subject-matter jurisdiction. The Plaintiffs cite two cases in support of their proposition that a licensee may be required to pay royalties even if a patent is not enforceable but those two cases do not deal with subject-matter jurisdiction. Those cases address the ultimate issue of the licensees' claim that payment of royalties depended upon the validity of the underlying patents. In addressing that issue, the court analyzed the language of the particular license and settlement agreements at issue. *See Studiengellschaft Kohle, M.B.H. v Shell Oil Co.*, 112 F.3d 1561, 1567 (Fed Cir. 1997); *Hemstreet v Spiegel, Inc.*, 851 F.2d 348, 351 (Fed. Cir. 1988). The Plaintiffs may be correct that the Defendants owe them royalties whether or not the patents at issue are enforceable but that argument goes to the merits of the dispute between the parties and not this Court's subject-matter jurisdiction.

In arguing that the enforceability of the patents and license agreement is not actually in controversy, the Plaintiffs argue that the Defendants have not alleged that the Plaintiffs have threatened to sue them for infringement of the patents or taken any action that would create in the Defendants a "reasonable apprehension" that the Plaintiffs would sue them for infringement. (DE 22, Mem at 7.) But the Plaintiffs recognize that, in *MedImmune*, the Supreme Court determined that, whether the declaratory judgment plaintiff has a reasonable apprehension of suit is no longer the sole test for jurisdiction in patent declaratory judgment actions. *See Prasco, LLC v. Medicis Pharmaceutical Corp.*, 537 F.3d 1329, 1336 (Fed. Cir. 2008). "[F]ollowing *MedImmune*, proving a reasonable apprehension of suit is one of multiple ways that a declaratory

judgment plaintiff can satisfy the more general all-the-circumstances test to establish that an action presents a justiciable Article III controversy." *Id*.

In *Prasco*, the court recognized that a patentee can cause injury sufficient to satisfy the case-or-controversy requirement in a number of ways including, as in this case, by demanding royalty payments. *Id*. at 1339. As discussed, in *MedImmune*, the Court concluded that "declaratory judgment jurisdiction was proper in the context of a patent licensing agreement when the patentee claimed a right to royalties under the licensing agreement, and the licensee asserted that no royalties were owing because the patent was invalid and not infringed." *Id*. For the same reason, declaratory judgment is proper in this case and this Court has subject matter jurisdiction to resolve that issue.

  **B.**  **Failure to state a claim**

As to their argument that the counterclaim should be dismissed for failure to state a claim, the Plaintiffs appear to raise two issues. First, they argue that, even if the '330 and '684 patents are not enforceable, the Defendants still must pay royalties pursuant to the terms of the licensing agreement. Second, the Plaintiffs argue that the license agreement cannot be deemed unenforceable due to frustration of purpose because it was foreseeable to the Defendants that the patents would be found unenforceable.

Both of these arguments require an analysis of at least the language of the license agreement and likely also require an analysis of the circumstances of the negotiation and signing of the license agreement. Accordingly, these arguments cannot be resolved on a motion to dismiss.

The Plaintiffs also assert that the Defendants' counterclaim must be dismissed because it is hypothetical since the claims of the patents at issue have not been finally rejected. In their

counterclaim, however, the Defendants assert that, "if the claims of a patent are rejected as unpatentable. . . then *even before reexamination is final*, the enforceability of those claims becomes tenuous at best." (DE 9, Counterclaim ¶ 11.)

Thus, the Defendants appear to assert that the value of the patents has been diminished even while their status is pending at the USPTO. In their response, they state that the "reexaminations have weakened the market's perception of how strong the Plaintiffs' patent rights are. . .and that the value of the license granted to Defendants has been diminished to the point of being worthless." (DE 24, Response at 9.)

Setting aside the issue of whether this allegation is correct, it at least asserts an actual injury instead of a hypothetical one. The Plaintiffs cite statistics indicating that it is likely that, after reexamination, the patent claims will be held valid. The Court cannot consider these statistics, however, on a motion to dismiss. Further, these statistics do not refute the Defendants' argument that the reexamination proceedings themselves have diminished the value of the license.

The Plaintiffs also cite case law indicating that the fact that a patent is undergoing reexamination does not establish a likelihood that it will be determined invalid. But, again, this case law does not address the Defendants' argument that the value of the patents has been diminished by the reexamination process.

### III. Conclusion.

For all these reasons, the Court hereby ORDERS that the Plaintiffs' motion to dismiss the Defendants' counterclaim (DE 22) is DENIED.

Dated this 30th day of September, 2013.



Signed By:
*Karen K. Caldwell*
United States District Judge