UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
CENTRAL DIVISION
AT LEXINGTON

CIVIL ACTION NO. 5:12-CV-333-KKC

NATURAL ALTERNATIVES, LLC, et al., PLAINTIFFS

v. **OPINION AND ORDER**

JM FARMS, et al., DEFENDANTS

\*\* \*\* \*\* \*\* \*\*

This matter is before the Court on the defendants' motion to stay (DE 35) this case pending an ongoing reexamination by the U.S. Patent and Trademark Office of two patents that are at issue in this action.

**I.   Background**

The plaintiffs assert that defendant JM Farms breached a license agreement by ceasing to pay monthly royalty payments as required. The parties entered into the agreement in October 2008. With it, Natural Alternatives granted JM Farms exclusive rights to five U.S. patents, three U.S. trademarks, one Canadian patent, four Canadian patent applications and one Canadian trademark.

The patents and trademarks all involve a process by which de-sugared beet juice is used to prevent ice from forming on roads. According to Natural Alternatives, JM Farms initially agreed to pay it a monthly royalty payment of $25,000. The parties later amended the agreement to reduce the monthly royalty payment to $12,500. (DE 38, Mem. at 3-4, DE 38-1, Agreement, DE 38-6,

Amendment.) There is no dispute that JM Farms ceased paying this amount in June 2012.

But JM Farms argues that it has a valid reason for no longer paying the monthly royalty payment. It alleges that, by June 2012, the U.S. Patent and Trademark Office entered a final rejection of all the claims of one of the patents – the '330 patent – and also later rejected all of the claims of another patent – the '684 patent. The reexamination proceedings commenced on January 23, 2009 after one of Natural Alternative's competitors filed requests for reexamination of both patents with the USPTO. (DE 38, Mem. at 3.) On May 30, 2014, the Patent Trial and Appeal Board affirmed the rejection of the '330 patent claims. It is unclear whether Natural Alternatives has requested a reconsideration of that decision. The reexamination proceedings for the '684 patent continue. (De 38, Mem. at 5-6.)

JM Farms raises two affirmative defenses that are related to the USPTO's actions. First, it argues that JM Farms properly terminated the agreement in July 2012 pursuant to a provision of the agreement that provides for termination "immediately upon written notice from LICENSEES . . . in the event that an injunction or other legal proceeding materially inhibits or prohibits the exercise of the license rights granted in this Agreement. . . ." (DE 9, Affirmative Defenses, ¶ 3; Counterclaim, ¶ 8; DE 41, Reply at 3.) Second, JM Farms asserts that its continued performance of the agreement is excused because the purpose of the license agreement has been frustrated by the USPTO's actions. (DE 9, Affirmative Defenses, ¶ 4.)

JM Farms now moves the Court to stay this action pending the USPTO's reexamination of the '330 and '684 patents.

**II. Analysis**

"Courts have inherent power to manage their dockets and stay proceedings, including the authority to order a stay pending conclusion of a [USPTO] reexamination." *Ethicon, Inc. v. Quigg*, 849 F.2d 1422, 1426–27 (Fed.Cir.1988) (citation omitted). "However, a district court may allow a case to move forward while reexaminations are underway since the functions of the courts and the Patent Office are very different." *TouchTunes Music Corp. v. Rowe Int'l Corp.*, 676 F.Supp.2d 169, 176 (S.D.N.Y.2009) (internal quotation marks and citations omitted). "There are three factors a court should take into consideration when deciding whether to stay litigation pending a patent reexamination: (1) whether a stay will simplify the issues in question and trial of the case; (2) the stage of the proceedings; and (3) whether a stay will unduly prejudice the nonmoving party." *Rosco, Inc. v. Mirror Lite Co.*, No. cv-96-5658, 2007 WL 2296827, at *2 (E.D.N.Y. Aug. 6, 2007) (citing *Telemac Corp. v. Teledigital, Inc.*, 450 F.Supp.2d 1107, 1111 (N.D.Cal.2006)).

As to whether a stay will simplify the issues here, it will not do so with regard to Natural Alternatives' claim. Again, Natural Alternatives asserts only a claim for breach of the license agreement. Patent invalidity is generally a defense to such a claim. *See Lear, Inc. v. Adkins*, 395 U.S. 653, 674 (1969); *PPG Industries, Inc. v. Westwood Chemical, Inc.*, 530 F.2d 700, 708 (6th Cir. 1976). And in cases

3

where that defense is asserted, it often makes sense to await the results of the USPTO's reexamination. While not binding on the Court, the USPTO's decision is "evidence the court must consider in determining whether the party asserting invalidity has met its statutory burden by clear and convincing evidence." *Fromson v. Advance Offset Plate, Inc.*, 755 F.2d 1549, 1555 (Fed. Cir. 1985). Further, the USPTO has "acknowledged expertise in evaluating prior art and assessing patent validity." *Old Reliable Wholesale, Inc. v. Cornell Corp.*, 635 F.3d 539, 548 (Fed. Cir. 2011).

But JM Farms does not assert patent invalidity as an affirmative defense to Natural Alternative's breach claim. (DE 9, Answer, Affirmative Defenses.) Instead, it asserts frustration of purpose as an affirmative defense. The license agreement involves 10 patents and only two of them are being reexamined. JM Farms asserts that the purpose of the license agreement has been frustrated by the actions that the USPTO has already undertaken with regard to the two patents because they are "the heart of the license agreement". (DE 9, Affirmative Defenses, ¶ 4; Counterclaim, ¶ 16.)

JM Farms does not argue that the *invalidity* of the two patents frustrates the purpose of the agreement but that "the reexamination proceedings by themselves frustrate the purpose of the license agreement. . . ." (DE 24, Response at 9.) It argues, "the reexaminations have weakened the market's perception of how strong the Plaintiffs' patent rights are, especially in view of the final rejection and pending appeal, making it now likely that Plaintiffs' ability to exclude others has been

reduced to near zero leverage, and that the value of the license granted to Defendants has been diminished to the point of being worthless." (DE 24, Response at 9.) The USPTO's ultimate determination regarding the patents would not simplify the issues involved in this defense. [1]

Thus, a stay of these proceedings would not help resolve Natural Alternatives' claims or JM Farms' defense to those claims.

There remains JM Farms' counterclaim. JM Farms asks the Court to make three declarations under the Declaratory Judgment Act, the first of which is that that the '330 and '684 patents are unenforceable and that it is not infringing those patents. (DE 9, Counterclaim I.) The Court construes this claim to assert, as with JM Farms' frustration-of-purpose defense, that the reexamination proceedings themselves have rendered the two patents unenforceable. Thus, as with the frustration-of-purpose defense, the USPTO's ultimate ruling is not critical to this claim.

The same is true for JM Farms' second claim in which it asks the Court to declare that the purpose of the license agreement has been frustrated by the USPTO's actions with regard to the '330 and '684 patents and by the effects of those actions on the parallel Canadian patents – the '738 and '795 patents. (DE 9, Counterclaim II.) Because JM Farms argues that the purpose of the license

---

[1] Even if JM Farms did assert patent invalidity as a defense to the breach claim, the Court would decline to stay this action pending the finalization of the USPTO's rulings. That defense is only viable if JM Farms establishes that the '330 and '684 patents are so critical to the agreement that their invalidity excuses JM Farms' further performance. Discovery and dispositive motions should continue on that issue and on JM Farms' defense that it properly terminated the agreement because the reexamination constitutes a "legal process [that] materially inhibits or prohibits the exercise of the license rights." Those are legal issues, the resolution of which will not be simplified by the USPTO's final ruling and need not await it.

5

agreement has already been frustrated by the USPTO's reexamination, the USPTO's ultimate ruling on the patents will not simplify the issues involved in this claim to any significant degree.

Finally, JM Farms asks the Court to declare that it is not infringing the remaining three U.S. patents or the remaining three Canadian patent applications that are the subject of the license agreement. (DE 9, Counterclaim III.) A stay pending the USPTO's examination would not simplify the issues with regard to this claim since the USPTO's examination does not involve these patents.

In addition, the most recent pleadings in this case have raised an issue as to the Court's subject-matter jurisdiction over this claim. JM Farms does not ask the Court to declare these patents unenforceable, but instead asks only for a ruling that it does not infringe "the '422, '753, and '308 patents from the United States, and the '532, '829, and '253 patent applications pending in Canada." (DE 9, Counterclaim, ¶ 27.) Natural Alternatives has not made an infringement claim with regard to these patents and JM Farms states unequivocally in its most recent pleadings that "Defendants do not now, never intended to, and never have engaged in any practices covered by the '422, '308, or '753 patents, or their Canadian counterparts." (DE 35-1, Mem. at 3.) Accordingly, this third counterclaim should likely be dismissed for lack of jurisdiction since there does not appear to be any substantial controversy between the parties regarding JM Farms' infringement of these patents. The Court will grant JM Farms 21 days to SHOW CAUSE why this counterclaim should not be dismissed.

For these reasons, the Court hereby ORDERS as follows:

1) the motion to stay (DE 35) is DENIED and the prior stay of this case (DE 37) is LIFTED;

2) within 14 days of the entry date of this order, the parties are ordered to submit a new proposed scheduling order consistent with this order. If the parties are unable to agree on a new proposed schedule, then each party should submit separate proposed schedules. For guidance as to the proper format, the parties may utilize Form 52, Fed. R. Civ. P. (App.);

3) if any party's proposed scheduling order contains dates for claims construction proceedings such as those contained in paragraphs 2 and 3 of this Court's prior scheduling order (DE 31), that party should submit an explanation as to how these proceedings are relevant to the claims or defenses in this action, given that JM Farms does not assert patent invalidity as a defense but instead asserts that the patent reexamination proceedings that have already occurred have rendered the patents unenforceable;

4) within 21 days from the date of this order, the defendants SHALL SHOW CAUSE why Count III of its counterclaim should not be dismissed for lack of subject matter jurisdiction. Natural Alternatives may file a response within 21 days of service of the defendants' brief; and

5) because the parties will be submitting a new proposed schedule, the plaintiff's motion to compel certain discovery (DE 33) is DENIED without prejudice as moot.

Dated December 2, 2014.

KAREN K. CALDWELL, CHIEF JUDGE
UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY