UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
CENTRAL DIVISION – LEXINGTON

CIVIL ACTION NO. 5:12-CV-333-KKC

NATURAL ALTERNATIVES, LLC, et al.,                                  PLAINTIFFS

v.                               **OPINION AND ORDER**

JM FARMS, et al.,                                                      DEFENDANTS

*** *** ***

This matter is before the Court on the defendants' motion (DE 44) asking the Court reconsider a prior opinion denying their motion to stay this case. For the following reasons, the motion is GRANTED in part and DENIED in part.

The facts are set forth in more detail in the opinion under reconsideration (DE 42). The plaintiff Natural Alternatives make a relatively straightforward claim against the defendant JM Farms. It asserts that it owns the rights under certain patents and trademarks and that it granted JM Farms a license to use those rights. In exchange, JM Farms must pay Natural Alternatives a monthly royalty payment of $12,500. There is no dispute that JM Farms ceased making the royalty payment in June 2012. Natural Alternatives sues JM Farms for breach of the license agreement.

JM Farms' defense has been somewhat less clear. When a licensee like JM Farms is sued for failing to pay royalty payments due under a license agreement, it can assert as an affirmative defense that the licensed patents are invalid. *See Lear, Inc. v. Adkins*, 395 U.S. 653, 674 (1969). As the Court stated in its prior opinion,

however, JM Farms did not appear to assert patent invalidity as a defense but instead asserted that the purpose of the license agreement had been frustrated by the United States Patent and Trademark Office's reexamination of two of the patents governed by the license agreement. In arguing that there is a current controversy between the parties, JM Farms itself explained its defense as follows:

> Defendants submit that the *reexaminations* have weakened the market's perception of how strong the Plaintiffs' patent rights are, especially in view of the final rejection and pending appeal, making it *now* likely that Plaintiff's ability to exclude others has been reduced to near zero leverage, and that the value of the license granted to Defendants has been diminished to the point of being worthless. Thus, *. . . the reexamination proceedings by themselves frustrate the purpose of the license agreement. . .*

(DE 24, Response at 9) (emphasis added).

Because JM Farms had asserted that the reexamination proceedings themselves had already rendered the two patents worthless, in its prior opinion, the Court concluded that this matter need not be stayed. That defense did not depend upon the ultimate outcome of the reexamination.

In its motion to reconsider, however, JM Farms clarifies that it actually does assert that the purpose of the license agreement has been frustrated because the two patents are invalid. Thus, it argues, staying this matter until the USPTO finally decides whether the patents are indeed invalid would help to clarify and simplify the issues in this case.

JM Farms explains that it cannot assert a simple patent-invalidity defense in this case because the license agreement grants it rights to use multiple patents and trademarks but only two are being reexamined by the USPTO. Thus, JM Farms

2

explains, it must assert that the invalidity of just two of the patents governed by the license agreement has frustrated the purpose of the whole agreement. In other words, patent invalidity is relevant "as part of a broader frustration of purpose defense. . . ." (DE 44-1, Mem. at 5.) JM Farms explains that the "basis of the frustration of purpose defense is that the patents are invalid and competitive entities are acting accordingly. . . In other words, it is not the re-exam itself that frustrates the purpose of the license agreement, it is the finding that those patents are invalid that frustrates the purpose of the license agreement." (DE 47, Reply at 1.)

Accordingly, the Court understands that JM Farms asserts as a defense to the breach of contract claim that it is excused from making royalty payments under the license agreement because the '330 and '684 patents are not valid, which has frustrated the purpose of the license agreement.

"Courts have inherent power to manage their dockets and stay proceedings, including the authority to order a stay pending conclusion of a [USPTO] reexamination." *Ethicon, Inc. v. Quigg*, 849 F.2d 1422, 1426–27 (Fed.Cir.1988) (citation omitted). "However, a district court may allow a case to move forward while reexaminations are underway since the functions of the courts and the Patent Office are very different." *TouchTunes Music Corp. v. Rowe Int'l Corp.*, 676 F.Supp.2d 169, 176 (S.D.N.Y.2009) (internal quotation marks and citations omitted). "There are three factors a court should take into consideration when deciding whether to stay litigation pending a patent reexamination: (1) whether a

3

stay will simplify the issues in question and trial of the case; (2) the stage of the proceedings; and (3) whether a stay will unduly prejudice the nonmoving party." *Rosco, Inc. v. Mirror Lite Co.*, No. cv–96–5658, 2007 WL 2296827, at *2 (E.D.N.Y. Aug. 6, 2007) (citing *Telemac Corp. v. Teledigital, Inc.*, 450 F. Supp. 2d 1107, 1111 (N.D.Cal.2006)).

Staying this matter would simply some of the issues in this case. As JM Farms concedes, its frustration-of-purpose defense fails if the USPTO should determine that either of the patents is valid. (DE 47, Reply at 2.) Likewise, if the USPTO should determine that either patent is invalid, while that determination is not binding on the Court, it would certainly assist the Court in its own validity determination given the recognized expertise of the USPTO. *Fromson v. Advance Offset Plate, Inc.*, 755 F.2d 1549, 1555 (Fed. Cir. 1985); *Old Reliable Wholesale, Inc. v. Cornell Corp.*, 635 F.3d 539, 548 (Fed. Cir. 2011). *See also Pass & Seymour, Inc. v. Hubbell Inc.*, 532 F. Supp. 2d 418, 436 (N.D. N.Y. 2007) (recommending a stay because "the parties and the court could benefit immensely from the expertise of the PTO" and because the USPTO's "determination could potentially avoid the necessity of this case going forward, or at a minimum materially reshape the issues presented.")

This case, however, presents issues beyond the validity of the patents. Natural Alternatives argue that JM Farms is obligated to pay royalty fees under the terms of the license agreement even if the '330 and '684 patents are invalid. It argues that, under the terms of the license agreement, JM Farms must pay the

4

royalty fees until "all of the patents have expired." (DE 46, Response at 4.) The reexamination proceedings will shed no light on that issue. Similarly, the reexamination proceedings will not help the Court in determining whether the purpose of the agreement has been frustrated by the invalidity of only two of the patents at issue.

As to the stage of the respective proceedings, this action has not yet proceeded into discovery. The USPTO process, on the other hand, began in 2009 (DE 38, Response at 3) – years before this litigation – and, even with appeals, should be nearly complete. (DE 44-1, Mem. at 2.) *See Affinity Labs of Texas v. Apple Inc.*, 09–04436 CW, 2010 WL 1753206, at *2 (N.D.Cal. Apr. 29, 2010 (stating that the average length of an *inter partes* reexamination is 36.2 months and 36 additional months if either party appeals the determination); *TPK Touch Solutions, Inc. v. Wintek Electro-Optics Corporation*, No. 13-cv-02218-JST, 2013 WL 5289015, at *3 (N.D. Cal. 2013) (stating that *ex parte* reexaminations take an average of 32.5 months with another 24 months for an appeal.)

As to prejudice, there is no indication that JM Farms' motion is made for dilatory or tactical reasons. "In many cases, the same party moves for both reexamination and for the stay." *Arlington Industries, Inc. v. Bridgeport Fittings, Inc.*, No. 3:CV-06-1105, 2008 WL 2595106,at *2 (M.D. Pa. 2008). In such cases, a court may find that the motion for a stay was filed for purely strategic reasons. *Id*. But here, JM Farms did not instigate the reexamination. A third party did years before this action was filed. Nevertheless, this action has been pending in this Court

for more than two years and both parties and the Court have an interest in it advancing.

Considering all of these factors, the Court finds that the most efficient and equitable means of proceeding with this case is to permit discovery and any appropriate motions on the issues that the Court must decide in this matter even if the two patents are invalid. For example, Natural Alternatives asserts that JM Farms remains obligated to pay royalty fees under the terms of the license agreement even if the '330 and '684 patents are invalid. JM Farms, on the other hand, argues that, if the two patents are invalid, then the purpose of the agreement has been frustrated. It also argues that, no matter what the license agreement states, it cannot be obligated to pay royalties under the license agreement as a matter of law if it the '330 and '684 patents are invalid and if it does not make any products covered by the remaining intellectual property governed by the license agreement. (DE 47, Reply at 3-4.) The Court will stay proceedings in this Court regarding the validity of the '330 and '684 patents until it resolves these issues.

In its prior opinion, the Court also ordered JM Farms to show cause why its Counterclaim III should not be dismissed for lack of subject matter jurisdiction. With that claim, JM Farms asks this Court for a ruling that it does not infringe the patents governed by the license agreement that are not under reexamination – the '422, '753, and '308 U.S. patents and the '532, '829, and '253 patent applications pending in Canada. (DE 9, Counterclaim III.) The Court noted that Natural Alternatives has not asserted that JM Farms infringes these patents and that JM

Farms had stated unequivocally in pleadings that "Defendants do not now, never intended to, and never have engaged in any practices covered by the '422, '308, or '753 patents, or their Canadian counterparts." (DE 35-1, Mem. at 3.)

In response, JM Farms states that it seeks a declaration that it does not infringe these patents because that is the general practice by defendants when an infringement claim is asserted against them. JM Farms acknowledges that Natural Alternatives has not asserted that JM Farms has infringed these patents. But JM Farms states that, after this Court's opinion, it contacted Natural Alternatives to obtain an agreement not to seek such a claim against JM Farms in the future and Natural Alternatives refused. JM Farms asserts that, because there is a "possibility" that Natural Alternatives will assert an infringement claim against it with regard to these patents, its declaration claim is ripe. (DE 45, Response at 2.)

The Declaratory Judgment Act requires an "actual controversy." 28 U.S.C. § 2201(a). A case is ripe under the Declaratory Judgment Act "only if the probability of the future event occurring is substantial and of 'sufficient immediacy and reality to warrant the issuance of a declaratory judgment.'" *National Rifle Ass'n of America v. Magaw*, 132 F.3d 272, 284 (6th Cir. 1997) (quoting *Golden v. Zwickler*, 394 U.S. 103, 108 (1969)).

The mere *possibility* that Natural Alternatives may assert an infringement action against JM Farms with regard to the patents not under reexamination does not create an actual controversy. Accordingly, the Court will dismiss without prejudice JM Farms' claim seeking a declaration that it has not infringed these

7

patents.  If Natural Alternatives should be permitted to amend its complaint to assert such a claim, JM Farms may move to amend its counterclaim.

For all these reasons, the Court hereby ORDERS that JM Farms' motion for reconsideration (DE 44) is GRANTED in part and DENIED in part as follows:

1) the parties may engage in discovery and motion practice regarding whether JM Farms remains obligated to pay royalty fees under the terms of the license agreement even if the '330 and '684 patents are invalid;

2) discovery and other proceedings on the issue of the validity of the '330 and '684 patents are STAYED until the Court resolves the issue discussed above;

3) within 14 days of the entry date of this order, the parties SHALL FILE a new proposed scheduling order containing a discovery plan and motion deadlines for the resolution of the issue discussed in paragraph 1;

4) within 7 days of the resolution of the USPTO's reexamination of either patent '330 or '684, Natural Alternatives, LLC SHALL FILE a notice advising the Court of the resolution; and

5) count III of JM Farms' counterclaim is DISMISSED without prejudice.

Dated April 28, 2015.

KAREN K. CALDWELL, CHIEF JUDGE
UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY